

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-8-1999

# U.S. v. Loy

Precedential or Non-Precedential:

Docket 98-3636

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"U.S. v. Loy" (1999). *1999 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES of America
v.
Ray Donald LOY, Appellant

No. 98-3636.

United States Court of Appeals,
Third Circuit.

Argued June 9, 1999

Filed Sept. 8, 1999

Appeal from the United States District Court for the Western District of Pennsylvania. District Judge: Honorable
Alan N. Bloch (D.C. Criminal No. 98-cr- 00089)

Marketa Sims, Esquire (ARGUED), Assistant Federal Public Defender, Shelley Stark, Esquire, Federal Public Defender, Pittsburgh, PA, COUNSEL FOR APPELLANT.

Mary Beth Buchanan, Esquire (ARGUED), Assistant United States Attorney, Harry Litman, Esquire, United States Attorney, Pittsburgh, PA, COUNSEL FOR THE UNITED STATES.

Before: SLOVITER and MANSMANN, Circuit Judges, and WARD*, District Judge.
* Honorable Robert J. Ward, United States District Judge for the Southern District of New York, sitting by designation.

OPINION OF THE COURT
WARD, District Judge.

BACKGROUND

In 1997, the United States Postal Inspection Service and the Pennsylvania State Attorney General's Office conducted a joint undercover child pornography investigation. On March 6, 1997, Ray Donald Loy wrote a letter to Postal Inspector Thomas Kochman in response to an advertisement placed in a sexually explicit magazine by Special Agent Dave Guzy of the Attorney General's Office. In that letter, Loy indicated that he and his wife had a "good collection" of child pornography and he expressed an interest in trading tapes with Kochman. Loy stated that if Kochman was serious about trading, Kochman should call Loy so they could discuss it over the telephone.

On March 17, 1997, Inspector Kochman monitored and recorded a call placed by Special Agent Guzy to Loy. During that conversation, Loy gave detailed descriptions of some of the tapes in his collection and told the agent that he could "put together" tapes for trading. He also indicated that he trades with many people and offered to give Guzy their names.

In addition, Loy described how he had produced videos by hiding a camcorder in his bag and filming up the skirts of young girls as they rode the escalators at a mall.

During the March 17 telephone conversation, Loy specified that he was interested in receiving material from the undercover agent involving girls ranging from eight to thirteen years of age. He specifically requested that Guzy send him a tape of girls between the ages of eight and ten in a bathtub ("Bath Time video"), which the agent agreed to do.

On April 28, 1997, Inspector Kochman received a letter from Loy bearing the return address of R. Loy, P.O. Box 114, Langeloth, Pennsylvania 15054, requesting again that the agent send him the Bath Time video. In exchange, Loy offered to send a video of twelve and thirteen year old children engaged in sexually explicit conduct.

Postal Inspector Thomas Clinton determined that the post office box Loy used as his return address had, in fact, been opened by Loy. The application for the box listed Loy's address as 204 Charles Street, Langeloth, Pennsylvania 15054. On May 5, 1997, Inspector Clinton prepared a package containing the Bath Time video for delivery to Loy's P.O. Box and, the same day, submitted an affidavit and application for an anticipatory search warrant for Loy's residence at 204 Charles Street. The application requested authorization to seize evidence of violations of Title 18 U.S.C. §§ 2252(a)(2), receipt of child pornography, and 2252(a)(4)(B), possession of child pornography. The evidence to be seized included: videotapes depicting child pornography, video equipment for viewing, producing, and reproducing child pornography, and lists of individuals with whom Loy traded. The application conditioned the search on Loy accepting delivery of the Bath Time tape and returning to his residence with the tape in his possession. Chief United States Magistrate Judge Kenneth J. Benson issued the anticipatory warrant requested by Inspector Clinton.

On May 6, 1997, Clinton delivered the package containing the tape to Loy's post office box in Langeloth, Pennsylvania and observed Loy accept delivery of the package. Other agents maintained surveillance of Loy as he left the post office and returned home with the tape. Loy was observed entering his residence with the package in his possession. Inspector Clinton then executed the search warrant, seizing from Loy's residence the Bath Time videotape as well as another tape depicting child pornography, fifteen computer disks containing child pornography, fifty videocassettes, several pornographic magazines, a VCR player and television set, as well as various letters describing Loy's solicitation of child pornography and his offers to trade such materials.

On May 2, 1998, a grand jury returned a two-count Indictment against Loy. The first count of the Indictment charged

Loy with knowingly receiving child pornography through the United States mail in violation of 18 U.S.C. §2252(a)(2). The second count charged him with knowingly possessing three or more items, containing visual depictions produced using materials transported in interstate and foreign commerce, the production of which involved the use of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).

Loy moved to suppress the evidence seized from his home, alleging that the search warrant was not supported by probable cause. A suppression hearing was held before the district court on August 13, 1998. The district court denied Loy's motion, finding that the warrant was supported by probable cause and that even if the warrant was invalid, the evidence need not be suppressed because the good faith exception to the exclusionary rule applied. On September 3, 1998, Loy entered an unconditional plea of guilty to Count One of the Indictment and a conditional guilty plea to Count Two. Loy's conditional plea preserved his right to appeal whether the search warrant was supported by probable cause and whether the officers reasonably relied on the warrant in good faith. On December 3, 1998 the district court sentenced Loy to a thirty- three month term of imprisonment followed by three years of supervised release. Additionally, the district court imposed special conditions of supervised release requiring Loy to undergo testing and treatment for drugs and alcohol, prohibiting him from having unsupervised contact with minors, and forbidding him from possessing pornography of any type. Loy objected to these conditions on the grounds that they were not supported by the record and violated his fundamental rights.

On appeal, Loy raises three arguments. First, Loy argues that the district court erred in failing to suppress the evidence obtained from his home pursuant to the anticipatory search warrant. Second, Loy contends that the search warrant issued by the magistrate judge did not describe the items to be seized with sufficient particularity since the overbroad language in the warrant could lead to the mistaken seizure of material protected by the First Amendment. The final argument made by Loy on appeal is that the district court abused its discretion in imposing the special conditions of supervised release.

DISCUSSION
I. Validity of the Warrant

A. Constitutionality of Anticipatory Search Warrants

As an initial matter, appellant urges this Court to rule that anticipatory warrants are per se unconstitutional. The constitutionality of anticipatory warrants, i.e. warrants that become effective upon the happening of a future event, is a

question of first impression in this Circuit. However, we recognize that every circuit court of appeals to have addressed this question has held that anticipatory search warrants are not categorically unconstitutional. See, e.g., United States v. Hugoboom, 112 F.3d 1081, 1085–86 (10th Cir.1997); United States v. Ricciardelli, 998 F.2d 8, 11 (1st Cir.1993); United States v. Tagbering, 985 F.2d 946, 950 (8th Cir.1993); United States v. Wylie, 919 F.2d 969, 974 (5th Cir.1990); United States v. Garcia, 882 F.2d 699, 703 (2d Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); United States v. Goodwin, 854 F.2d 33, 36 (4th Cir.1988); United States v. Goff, 681 F.2d 1238, 1240 (9th Cir.1982); United States v. Lowe, 575 F.2d 1193, 1194 (6th Cir.) cert. denied, 439 U.S. 869 (1978); United States ex rel. Beal v. Skaff, 418 F.2d 430, 432–33 (7th Cir.1969).[1] Such warrants have repeatedly been upheld where they are supported by probable cause and the conditions precedent to the search are clearly set forth in the warrant or supporting affidavit. Hugoboom, 112 F.3d at 1085 (citing cases). We agree with the other circuits that "the simple fact that a warrant is 'anticipatory' ... does not invalidate a warrant or make it somehow suspect or legally disfavored." United States v. Gendron, 18 F.3d 955, 965 (1st Cir.), cert. denied, 513 U.S. 1051, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994); Hugoboom, 112 F.3d at 1085 (quoting Gendron, 18 F.3d. at 965). We hold, therefore, that anticipatory warrants which meet the probable cause requirement and specifically identify the triggering event are not per se unconstitutional.

---

1. The only other circuit that has not yet directly addressed this question is the Eleventh Circuit. However the Eleventh Circuit has indicated in dictum that anticipatory warrants are appropriate when the contraband is on a "sure course" to a known destination. United States v. Nixon, 918 F.2d 895, 903 n. 6 (11th Cir.1990).

---

B. Probable Cause

Anticipatory warrants differ from traditional warrants in that they are not supported by probable cause to believe the items to be seized are at the place to be searched when the warrant is issued. United States v. Rowland, 145 F.3d 1194, 1201 (10th Cir.1998). In fact, when issuing an anticipatory warrant, the court knows that the contraband has not yet reached the place to be searched. Id. That does not mean, however, that anticipatory warrants do not have to be supported by probable cause. As with all warrants, there must be a sufficient nexus between the contraband to be seized and the place to be searched before an anticipatory warrant can be issued. Id. (quoting United States v. Dennis, 115 F.3d 524, 529 (7th Cir.1997)).

To satisfy the nexus requirement, it is not enough that the anticipatory search warrant be conditioned on the contraband

arriving at the designated place. While such conditions guarantee that there will be probable cause at the time the search is conducted, the warrant must also be supported by probable cause at the time it is issued. See Rowland, 145 F.3d at 1202 ("Although the conditions precedent ensure that an anticipatory warrant will not be executed prematurely, such conditions do not serve as a substitute for the magistrate's probable cause determination."); see also United States v. Hendricks, 743 F.2d 653, 654-56 (9th Cir.), cert. denied, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985)(holding anticipatory search warrant for defendant's home invalid where the affidavit provided no assurances that defendant would take the contraband home after picking it up at the airport, despite the fact that the warrant was conditioned on the contraband arriving at defendant's house). Consequently, when presented with an application for an anticipatory warrant, the magistrate judge cannot rely on police assurances that the search will not be conducted until probable cause exists. Rowland, 145 F.3d at 1202. Instead, the magistrate judge must find, based on facts existing when the warrant is issued, that there is probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed. Id.

Since our review of the district court's decision denying Loy's motion to suppress is plenary, United States v. Williams, 3 F.3d 69, 71 (3d Cir.1993), we must apply the same deferential standard as the district court in reviewing the magistrate judge's initial probable cause determination. Id. at 71 n. 2 (citing United States v. Jones, 994 F.2d 1051 (3d Cir.1993)). This deferential standard, however, "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions...." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir.), cert. denied, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984). Instead, the duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Where the warrant application indicates that there will be a controlled delivery of contraband to the place to be searched, the nexus requirement of probable cause is usually satisfied. Rowland, 145 F.3d at 1202-03. However, where as here, the delivery of the contraband is to a place other than the one to be searched, namely, Loy's post office box, "the warrant application must present additional facts establishing [that] the contraband will be taken to the place designated for [the] search." Id. at 1203. As explained above, the fact that an anticipatory warrant is conditioned on the contraband arriving at the place to be searched is insufficient to meet the probable cause requirement. Therefore, there must have been probable cause at the time the warrant was issued to believe that Loy would bring the tape home with him

after picking it up at the post office.

The only support in the warrant application for the assumption that Loy would return home with the videotape was Inspector Clinton's statement, "[i]t is anticipated that Ray Loy, upon receipt of this package, will return to his residence at 204 Charles Street, Langeloth, Pennsylvania 15054 with this package in his possession at the time he enters his residence." There was no evidence in the affidavit that Loy had previously transported child pornography from his private post office box to his residence or that he would do so in this instance. Nor were there any facts indicating that Loy had used his residence in the past for receiving child pornography.[2] Id. at 1204 (finding that the probable cause requirement was not met, in part, because the affidavit provided no evidence that defendant had transported contraband from his post office box to his residence or facts otherwise linking his home to the suspected illegal activity).

_____

2. In denying Loy's motion to suppress, the district court found that the affidavit illustrated defendant's intent to receive child pornography at his home rather than any other location or, the court stated, the affidavit, at least, sets forth the defendant's use of his home in connection with his illegal activities. The court based this finding on the fact that Loy included his home address in some of his letters to the undercover agents. We do not believe this finding is supported by the record. While Loy did provide his address to the agents, he consistently stated that his post office box was the only place that the agents could send sexually explicit materials.

_____

The government, nevertheless, contends that there was probable cause to believe Loy would bring the video home, based on the assumption that Loy stored his child pornography at his house. In support, the government cites Inspector Clinton's statement contained in the affidavit that based on his experience, those who collect pornographic materials involving minors "commonly ... maintain this material in the privacy of their homes." While a magistrate judge may consider an expert's opinion in finding probable cause, Inspector Clinton's profile was directly contradicted by Loy's statement to the undercover agent that he only kept the "stuff that's legal" at his residence. The other pornographic materials he kept in a rented storage facility because, he explained, "if I keep it out of my house then I'm cool."[3]  In light of Loy's assertion, Clinton's experience and expertise, without more, is insufficient to establish probable cause.

_____

3. Loy also told the agent that both he and his wife were interested in child pornography but that he kept the "very young stuff" hidden because he was not sure how his wife would feel about it. Based on this information, the government contends that the magistrate judge could have reasonably inferred that Loy only used the storage facility to hide the "very

young stuff" from his wife and kept the rest of his child pornography at home where they could both access it easily. Considering Loy's statement that he only keeps his "stuff that's legal" at home, we do not find that this is a reasonable inference from the facts contained in the affidavit.

_____

According to the government, even if this Court finds the affidavit insufficient to show that Loy stored child pornography in his home, we can still find that there was probable cause to believe the tape would be found during the search, based on the logical inference that Loy would, at least, take it home with him to view. As the Tenth Circuit noted, "[i]n making the probable cause determination, the issuing magistrate may draw reasonable inferences from the material provided in the warrant application." Rowland, 145 F.3d at 1205 (citing Gates, 462 U.S. at 240). However, we do not find that the inference advanced by the government is supported by the facts contained in the affidavit. Although it may have been reasonable for the magistrate judge to infer that Loy would not view the videotape at the storage facility, there was no basis for finding that he would view it at his home as opposed to some other location. Cf. id. at 1205 (finding the possible inference that the defendant would take the tapes of child pornography home to view, without any explanation as to why he was more likely to view the tapes at home than at some other location, insufficient, in and of itself, to establish probable cause to believe the tape would be at the defendant's home when the search was conducted).

In sum, we do not find that the magistrate judge had a substantial basis for believing that the warrant was supported by probable cause. Inspector Clinton's conclusory statement that people who collect child pornography commonly keep it in their homes is insufficient, in light of Loy's own assertion that he kept it in a storage facility, to provide the requisite nexus between the contraband and Loy's residence. Similarly, there was insufficient evidence in the affidavit from which the magistrate judge could infer that Loy would bring the videotape home to view rather than take it to some other location to watch. Cf. Rowland, 145 F.3d at 1204–06 (finding anticipatory warrant to search defendant's home not supported by probable cause when tapes depicting child pornography were delivered to defendant's post office box and there were no facts in the affidavit suggesting that he would take the tapes home with him rather than take them to some other location to view or store); Hendricks, 743 F.2d at 654–56 (holding anticipatory search warrant for defendant's home invalid when defendant was required to pick up contraband at the airport and there was no information indicating that he would take the contraband home or otherwise linking defendant's residence with illegal activity). We, therefore, find that the warrant was not supported by probable cause and as such was invalid.4

_____

4. In addition to the Bath Time video, the warrant authorized the agents to search for and seize material depicting children engaging in sexually explicit conduct as well as related correspondence, mailing lists, and video equipment. While Loy's conversations with the agents provided probable cause to believe that he possessed such items, the affidavit did not provide probable cause to believe that they would be found at Loy's residence. With regard to the other sexually explicit materials, the affidavit provided no facts indicating that Loy used his residence to view, store or produce child pornography, especially in light of Loy's statement that he only kept the "stuff that's legal" at home. As for the correspondence and mailing lists, although Loy initially gave the undercover agents his home address and telephone number, suggesting that he used his residence to solicit illicit materials, he subsequently told the agents that he changed his telephone number and that they could only contact him through his post office box. While Loy offered to give the agents his new number, there is no evidence that he ever did. We, therefore, find that the affidavit provided insufficient facts linking Loy's residence to his illegal activities.

_____

C. Good Faith Exception

In United States v. Leon, 468 U.S. 897, 926 (1984), the Supreme Court held that evidence found to be unsupported by probable cause is, nevertheless, admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922, n. 23. Outlining the parameters of the exception, the Supreme Court recognized that there are circumstances in which an officer's reliance on a warrant will not be reasonable and therefore suppression will be appropriate. For example, the Court noted that the exception will not apply "where the warrant is so facially deficient ... that the executing officers cannot reasonably presume it to be valid" or the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923. 5

_____

5. Our review of the district court's determination that the officers relied on the warrant in good faith is plenary. United States v. Williams, 3 F.3d 69, 71 n. 2 (3d Cir.1993)

_____

Appellant relies heavily on United States v. Ricciardelli, 998 F.2d 8 (1st Cir.1993), in support of his assertion that the good faith exception should not apply here. In Ricciardelli, the court refused to apply the exception where the requisite nexus between the item to be seized and the place to be searched was not established. Id. at 17. The defendant in that case ordered a videotape of child pornography from undercover officers who then arranged for a controlled delivery of

the tape to the defendant's home. Prior to the delivery, the officers applied for and obtained a search warrant for the defendant's residence which was conditioned on his receipt of the package. The package was sent in such a way that it could not be delivered unless it was signed for by the defendant. Since he was not at home when the post office attempted to make the delivery, the mail carrier left a note indicating that Ricciardelli could pick up the package at the post office. That afternoon, the defendant retrieved the tape from the post office and returned home with it in his possession, at which point the officers, relying on the warrant, searched his residence.

The court found the search warrant for the defendant's residence fatally defective because it did not require that the package containing contraband arrive at the defendant's home before the search could be conducted. Id. at 13. Instead, the warrant only required that the defendant personally receive the package. In other words, the warrant authorized the agents to search the defendant's home regardless of where and when he took possession of the contraband. Although the officers waited until the defendant returned home with the tape to execute the search, the court refused to apply the good faith exception, finding that a reasonably prudent officer should have known that the requisite nexus between the item to be seized and the place to be searched had not been established. Id. at 16. In reaching its decision, the court also noted that it was the officers, not the magistrate judge, who were responsible for the defect. The officers had failed to inform the magistrate judge that the package had to be signed for. As a result, the magistrate judge was unaware of the possibility that Ricciardelli would have to pick up the package at the post office and, therefore, might not be at home when he took possession of the contraband. Id. at 17. Had the magistrate judge been fully informed, the court stated, the warrant may have been more finely tuned. Id.

While the requisite nexus between the item to be seized and the place to be searched is lacking here, as it was in Ricciardelli, the warrant in this case was conditioned on more than Loy's mere receipt of the package. Loy not only had to take possession of the package but he had to return home with it before the search could be conducted. Moreover, unlike the officers in Ricciardelli, there is no indication in the record that the officers here withheld information that could have led the magistrate judge to issue a different warrant or were in anyway responsible for the warrant's defect. We, therefore, reject appellant's assertion that Ricciardelli should guide us on this issue.

United States v. Rowland, 145 F.3d 1194 (10th Cir.1998), cited by appellees, seems to us to be more on point. In Rowland, another case similar to this one, the requisite nexus between the items to be seized and the place to be

searched was also lacking. Nevertheless, the court applied the good faith exception and refused to suppress the evidence. Id. at 1206. The court relied on three factors in reaching its decision. First, the court noted that the affidavit, while defective, was more than just a "bare bones" affidavit based on conclusory statements and lacking factual support. Instead, the affidavit included detailed information about the investigation into Rowland's criminal activity. Second, the court emphasized that the affidavit placed specific conditions on the execution of the warrant, rendering it ineffective until the defendant returned home with the videotape. In other words, it ensured that there would be probable cause at the time of the search. Finally, the court found that it was not unreasonable for the officers to rely on the magistrate judge's authorization because the 10th Circuit had not yet ruled on the constitutionality of anticipatory warrants and had not yet articulated what conditions would be required for such warrants to be valid. Based on these factors, the court concluded that the officers could not be expected to know that the magistrate judge made an erroneous probable cause determination. Id. at 1206–08.

All three of the factors cited by the Tenth Circuit are present before us here. As in Rowland, the Clinton affidavit was not a "bare bones" document but rather contained detailed facts regarding the investigation into Loy's criminal activities, the warrant required that Loy return home with the package before the search warrant could be executed, guaranteeing that there would be probable cause when the search was conducted, and this Circuit had not yet decided the constitutionality of anticipatory warrants at the time the warrant was issued. Based on the Rowland analysis, we do not find that the warrant was so facially deficient or lacking in indica of probable cause that a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization. As a result, we find that the good faith exception applies and uphold the district court's denial of defendant's motion to suppress.

II. Particularity Requirement

Appellant argues that the portion of the warrant which sought "[p]hotographs, drawings, magazines or other visual media to include photographic slides, videotapes or literature depicting children under the age of 18 years engaging in sexually explicit conduct as defined in Title 18, U.S.Code, Section 2256," was impermissibly broad since it failed to describe the items to be seized with sufficient particularity. Specifically, Loy contends that the phrase "children under the age of 18" could lead to the seizure of material protected by the First Amendment by executing officers unable to distinguish between illegal child pornography and legal adult pornography. We review the magistrate judge's determination for plain error.

United States v. Martinez– Zayas, 857 F.2d 122, 134 (3d Cir.1988); United States v. Bey, 736 F.2d 891, 895 (3d Cir.1984). 6

_____

6. Appellant concedes that he did not raise this argument in his motion to suppress but argues that since particularity is intertwined with probable cause, the issue was nevertheless preserved. We disagree. Appellant cites no support, nor have we found any, for the proposition that preserving the right to appeal an adverse probable cause determination simultaneously safeguards appellant's right to appeal on the basis of particularity. However, issues that are not preserved may nevertheless be reviewed for "plain error." United States v. Riddick, 156 F.3d 505, 509 (3d Cir.1998)(citing Fed.R.Crim.P. 52(b))

_____

We find that the warrant describes the materials to be sought with all the particularity required by the Constitution. Courts faced with similar warrants have consistently found that such language is not overbroad. For example, in United States v. Hurt, 795 F.2d 765, 772 (9th Cir.), cert. denied, 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987), the Ninth Circuit held that a warrant was sufficiently particular where it authorized the search for materials "depicting minors (that is, persons under the age of 16) engaged in sexually explicit conduct." Similarly, the Fifth Circuit upheld a search warrant where it referred to the items to be seized as "child pornography." United States v. Layne, 43 F.3d 127, 132 (5th Cir.), cert. denied, 514 U.S. 1077, 115 S.Ct. 1722, 131 L.Ed.2d 580 (1995).

While we recognize that in some cases it may be difficult to distinguish between adults and children, we agree with the Eighth Circuit that, "[t]he fact that some adults look like minors and some minors look like adults does not mean a warrant is overbroad. Most minors look like minors and most adults look like adults, and most of the time most law enforcement officers can tell the difference." United States v. Koelling, 992 F.2d 817, 822 (8th Cir.1993). In sum, we find that the phrase "children under the age of 18" is not so uncertain as to make a warrant defective, even though it might lead to the mistaken seizure of adult pornography.

III. The Conditions of Supervised Release

As this court has recognized, a sentencing judge has wide discretion in imposing conditions of supervised release. United States v. Crandon, 173 F.3d 122, 127 (3d Cir.), petition for cert. filed, (U.S. June 14, 1999)(No. 98– 9838). However, the court's discretion is not without limitations. An order may be a condition of supervised release only to the extent that it: (1) reasonably relates to the factors set forth in the statute containing the sentencing guidelines and (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in the statute. 18 U.S.C. § 3583(d)(1) & (2).

This statutory scheme provides for consideration of: (1) the nature and circumstance of the offense and the history and characteristics of the defendant and (2) the need for the sentence imposed to deter future criminal conduct, protect the public, and provide the defendant with necessary training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(1) & (2). 7

---

7. A district court's findings regarding the imposition of supervised release are reviewed for abuse of discretion. Crandon, 173 F.3d at 127.

---

A. Testing and Treatment for Drug Abuse 8

Appellant argues that since there was no indication in the pre-sentence report or elsewhere in the record that he ever used drugs, this condition is not reasonably related to any statutory goal and involves a greater deprivation of liberty than required. While it is true that there is nothing in the pre- sentence report, or elsewhere in the record indicating that Loy engaged in illegal drug use, submission to drug testing is a mandatory condition of supervised release, regardless of the defendant's drug history. 18 U.S.C. § 3563(a)(5). Loy, nevertheless, argues that the court abused its discretion in requiring drug testing since the statute provides that the condition "may be ameliorated or suspended by the court for any individual defendant if the defendant's pre-sentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant." Id. What Loy overlooks in making this argument is that the relevant provision merely suggests that the court "may" ameliorate or suspend the condition where there is low risk of future substance abuse. It does not state that the court is required to do so. Consequently, the district court cannot be said to have abused its discretion in imposing drug testing as a condition of Loy's supervised release, despite his lack of prior drug use.

---

8. We address the alcohol and drug components of this condition separately since the court is required by statute to impose drug testing as a condition of supervised release, while the imposition of alcohol testing and treatment is discretionary. See 18 U.S.C. § 3563(a)(5).

---

As for the drug treatment component of the condition, the district court only directed that Loy submit to drug treatment "if necessary" and "as directed by the probation officer." Whether Loy will have to enroll in drug treatment program, then, depends on whether he tests positive for drug use. If the tests reveal no evidence of drug use, then treatment would not be "necessary" and as such, could not be required. Consequently, we do not find that the district court abused its discretion

by imposing provisional drug treatment as a condition of supervised release.

## B. Conditions Requiring Alcohol Testing and Treatment, Prohibiting Unsupervised Contact with Minors, and Forbidding Appellant from Possessing Pornography

Loy also argues that the district court abused its discretion by ordering him to submit to alcohol testing and treatment, prohibiting him from having unsupervised contact with minors, and forbidding him from possessing pornography of any kind. Generally, appellant argues that these conditions are not reasonably related to any of the statutory goals and involve a greater deprivation of liberty than required.

The court imposed these special conditions without making any factual findings relating to them or providing any reasons in support of them. While the district court has broad discretion in fashioning conditions of supervised release, the sentencing judge is required by statute to state the reasons in open court for imposing a particular sentence. See 18 U.S.C. § 3553(c). By explaining the reasons behind the sentence, the court ensures that appellate review does not "flounder in the zone of speculation." United States v. Edgin, 92 F.2d 1044, 1049 (10th Cir.), cert. denied, 519 U.S.1069 (1997)(quotations omitted). Since we do not know why the district court imposed these conditions, we cannot properly review Loy's abuse of discretion claim. Accordingly, we remand the case and direct the district court to state its reasons for requiring alcohol testing and treatment, prohibiting unsupervised contact with minors, and forbidding Loy from possessing pornography of any kind. In remanding, we remind the court that the conditions of supervised release must be reasonably related to the goals of deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3583(d)(1) & § 3553(a)(2). Moreover, we caution that any condition implicating the deprivation of liberty can be no greater than necessary to meet these goals. 18 U.S.C. § 3583(d)(2).

## CONCLUSION

For the reasons stated above, we uphold the district court's denial of defendant's motion to suppress. Although the search warrant for Loy's residence lacked probable cause, the officers reasonably relied on the warrant in good faith. Moreover, we find that the warrant described the items to be seized with sufficient particularity. We remand the case to the district court for further findings relating to the conditions of supervised release.