**UNITED STATES of America,
Plaintiff,**

v.

**Roy K. BINGHAM, Defendant.**

**No. CR. 02–25J.**

United States District Court,
W.D. Pennsylvania.

July 8, 2003.

William J. McCabe, DeBernardo, Anto-
niono, McCabe & Davies, Greensburg,
Marketa Sims, Federal Public Defender's
Office, Pittsburgh, for Roy K. Bingham (1),
Keith L. Glover (2), defendants.

John J. Valkovci, Jr., United States At-
torney's Office, Johnstown, for U.S. Attor-
neys.

## MEMORANDUM ORDER

CINDRICH, District Judge.

Defendant was indicted for conspiracy to
distribute crack and heroin and for posses-
sion with the intent to distribute crack and
cocaine. On May 19th and 20th, 2003, the
court held a suppression hearing and oral-
ly denied defendant's motion to suppress.
Thereafter, defendant entered a guilty
plea. We write to address one of the
issues raised during the suppression hear-
ing, the officers' use of an "anticipatory
search warrant," in more detail.

*Factual Background*

The defendant in this case was not the
primary target. However, he was known
to officer Kevin Price, the leader of this
investigation. In June 2002, while Price
was making an undercover buy of drugs
from the former residence of co-defendant
Keith Glover, defendant Roy Bingham
walked into the home without knocking,
such as a resident or frequent guest would
do. Between June and September, 2002
(when the anticipatory warrant was ob-
tained), Glover moved to a new residence.
As Price testified at the suppression hear-
ing, the drug purchase which is the subject
of the instant case was the first controlled
buy from Glover's new home. The officers

had not conducted any surveillance of the home prior to September 18, 2002.

The affidavit of probable cause, attached as Appendix I, was prepared on September 18, 2002. In paragraph 1, Price recounted his considerable experience in narcotics investigations. Paragraph 2 explained that Price was working with a reliable confidential informant. Paragraphs 3 and 4 of the affidavit recounted two undercover drug buys, of heroin, from Glover's old home in June, 2002. Paragraph 5 recounted a traffic stop of Glover's car while driven by defendant Bingham in which marijuana, currency and a scale were found.[1] In paragraph 6, the affidavit reported that Glover had moved. Then, at paragraph 7, the affidavit baldly stated: "We anticipate in the next 72 hours, this AFFIANT and the Cambria County Drug Task Force will execute a controlled buy of CRACK COCAINE from a black male identified as Keith GLOVER." There was no explanation of why the officers expected to be able to perform a buy during that time. The affidavit did not explain why this buy would involve crack cocaine when the earlier buys involved heroin. Nor was there any information to connect the controlled substances to Glover's new home. Instead, the affidavit went into considerable detail about the mechanics of the controlled buy. The affidavit was reviewed by an assistant district attorney and then authorized by the Chief Judge of the Court of Common Pleas of Cambria County.

After the anticipatory search warrant was issued, officers observed Bingham and Glover enter the home. The officers then initiated the controlled buy, according to the protocol described in the affidavit of probable cause. Ten or fifteen minutes elapsed between the controlled buy and the pre-planned execution of the warrant.

When the officers gained entrance through a ruse, defendant ran, dove out a window and was arrested by officers guarding the perimeter.

*Theoretical Considerations*

■ The Fourth Amendment to the United States Constitution reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Anticipatory search warrants are a relatively new phenomenon. In 1990, Fed. R.Crim.P. 41(a) was amended to permit anticipatory search warrants "by omitting the words 'is located,' which in the past required that in all instances the object of the search had to be located within the district at the time the warrant was issued." Rule 41 Advisory Committee Notes. They are not unconstitutional per se. *United States v. Loy,* 191 F.3d 360 (3d Cir.1999). However, as this case illustrates, officers, prosecutors and issuing magistrates are unclear about the constitutional requirements for such warrants.

The Court of Appeals, in *Loy,* articulated the general principles governing anticipatory search warrants in the context of a child pornography investigation. The principles set forth in *Loy* are easily applied to shipments of drugs intercepted through the mails. We address the use of an anticipatory search warrant in the somewhat more complicated context of a controlled purchase of illegal drugs by a confidential informant.

---

**1.** Although not stated in the affidavit, Officer Price was also aware that there was a bench warrant out for Bingham's arrest because he had failed to appear for jury duty.

■ "Anticipatory" search warrants are so named because they require the occurrence of some future event(s) before they become effective. *Id.* at 364. In theory, they make great sense. Evidence of drug crimes is easily moveable. If the officers have reliable information that contraband will be at a certain place at a specified future time, they can present that information for judicial approval in advance. Rather than waiting until the conditions materialize, when exigent circumstances[2] may exist, officers can give the issuing magistrate a better opportunity to review the affidavit by acting ahead of time.

■ Anticipatory search warrants must comply with the Fourth Amendment. As the Court of Appeals has explained, "it is not enough that the anticipatory search warrant be conditioned on the contraband arriving at the designated place. While such conditions guarantee that there will be probable cause at the time the search is **conducted**, the warrant must also be supported by probable cause at the time it is **issued**." *Id.* at 365 (emphasis added). The text of the Fourth Amendment requires that "no Warrants shall **issue**, but upon probable cause." (Emphasis added).

■ The tautological conclusion—that probable cause will exist after the triggering conditions which give rise to probable cause have been met—is unhelpful to a Fourth Amendment analysis. Of course, after a controlled drug buy has occurred in a house, there will be probable cause to believe that additional drugs, and paraphernalia will be found. At a minimum,

the proceeds from the drug sale will likely still be in the home. The Fourth Amendment, however, requires more. The affidavit must set forth facts that demonstrate probable cause to believe that the triggering conditions (in this case, the controlled buy) will occur. "[T]he magistrate judge cannot rely on police assurances that the search will not be conducted until probable cause exists." *Id.* Rather, "the magistrate judge must find, **based on facts existing when the warrant is issued**, that there is probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed." *Id.* (emphasis added). If the law were otherwise, it would be possible for the police to get an anticipatory search warrant for every residence—just in case they might be able to make a controlled buy there.

Anticipatory search warrants incorporate judicial scrutiny earlier in the sequence of events than in traditional search warrants. Rather than a judge determining whether probable cause has been shown that the evidence of a crime *is* in a certain place, as in a traditional warrant, the officers executing an anticipatory warrant must decide whether the triggering conditions have been met. Thus, without tight controls on the use of anticipatory warrants, courts could be accused of ceding their decision-making authority to the police force, the very entity the Fourth Amendment was designed to protect against.

■ Anticipatory search warrants are prone to potential abuse. What if most,

---

2. The factors to be considered in the exigent circumstances exception to the warrant requirement are: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant,(2) reasonable belief that the contraband is about to be removed,(3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought,(4) information indicating

the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." *United States v. Rubin*, 474 F.2d 262, 268–69 (3d Cir.1973) (citations omitted).

but not all, of the conditions set forth in the affidavit of probable cause occur? What if the conditions are substantially, but not entirely, fulfilled? What if the address on the affidavit contains a typographical error? What if the affidavit describes a purchase of powder cocaine but the confidential informant receives crack or heroin? What if the target won't sell the controlled substance but gives the confidential informant a "free sample"? What if the target purports to sell crack but the field test is negative? What if the target accepts the money but says that the confidential informant will have to pick up the drugs the next day? What if the target tells the confidential informant that he just sold out? What if the target goes outside or into a different residence during the buy and returns with the contraband? What if the entire transaction occurs outside or in a different residence? What if one or all of the residents leave the home before the warrant can be executed? Obviously, there is an almost limitless array of circumstances that may occur. Some of these scenarios may represent *de minimis* variations that would not invalidate the warrant, while others are significant. Who decides? It will be difficult to subject the officers' decision-making process to judicial scrutiny after-the-fact. Because of the increased latitude anticipatory warrants afford to officers, additional safeguards are needed to protect citizens' Fourth Amendment rights. This augurs for a strict interpretation of the "particularity" requirement in the Fourth Amendment's text. Issuing magistrates should condition anticipatory warrants upon strict compliance with the time, place and events described in the affidavit of probable cause.

*Practical Considerations*

■ We now attempt to give practical guidance to those persons involved in seeking and authorizing anticipatory search warrants. In *United States v. Garcia*, 882 F.2d 699, 703 (2d Cir.1989), the Court explained that the affidavit underlying the warrant "must show, not only that the [government] agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery." (Emphasis in original). The Court also explained that the issuing magistrate "should protect against its premature execution by listing in the warrant conditions governing its execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Id.* at 703–04. We agree. Issuing magistrates "must also carefully craft anticipatory warrants to limit the scope of the warrant-authorized search to items which law enforcement officers have probable cause to believe are located on the premises." *Id.* at 704.

■ We will use this case as an illustration. First, the affidavit of probable cause should contain a prominent notification that the officers are seeking an **ANTICIPATORY SEARCH WARRANT.** This will serve to put the issuing magistrate on notice of the particularized requirements of anticipatory warrants. Second, the affidavit must explain why officers believe that the triggering events will occur. At paragraph 7, the affidavit of probable cause stated: "We will perform a controlled buy from Glover's new residence in the next 72 hours." To be effective, the affidavit should also state, for example: *"Our confidential informant has been in contact with Glover in the past week. We have used this confidential informant xxx times over the past xxx months and have found him to be 100% reliable. Glover told the informant that he would be returning from Pittsburgh in the next 72 hours with cocaine and that the confidential informant could buy some at the new home when Glover returned. Government*

*agents will conduct surveillance of the home prior, during and after the controlled buy. The controlled buy will be performed according to standard procedures, as follows ....*" The remainder of the affidavit of probable cause used in this case, which sets forth the mechanics of the controlled buy, is well-drafted.

 We review issuing magistrate's decisions to ensure that they had a "substantial basis" for concluding that probable cause existed. *Loy,* 191 F.3d at 365. This is a deferential review, but not a rubber stamp. *Id.* The issuing magistrate must treat anticipatory warrants with more caution than traditional warrants. First, the magistrate should incorporate the affidavit of probable cause into the warrant. There should be a prominent textual reference along the lines that **"This warrant is not effective except upon the occurrence of the conditions set forth in the attached affidavit of probable cause."** The affidavit should then be physically attached to the warrant.[3] This is necessary to give the citizen affected by the search a reasonable explanation of the grounds for the search. Second, the issuing magistrate should also explicitly tie the time of execution to the conditions set forth in the affidavit. For example, in this case, the affidavit of probable cause stated that the controlled buy would occur within 72 hours. However, the judge signed the warrant for execution by that evening. Because the warrant was authorized before the 72 hours elapsed, the conditions that gave probable cause may not yet have occurred. If the affidavit explains that the target will return to his residence with

drugs in the next 72 hours, the issuing magistrate should condition the warrant upon the officers' observation that the defendant did return home in those 72 hours. If the officers cannot say when the events will occur, they have most likely not demonstrated probable cause. Third, the issuing magistrate should give the officers a limited, reasonable time to perform the controlled buy, to avoid staleness[4] concerns. For example, the issuing magistrate could state that the warrant will be effective only if the controlled buy is performed within 24 hours of the officers' observation that the target had returned to his residence. In summary, the issuing magistrate must ensure that probable cause exists at the time of issuance, that the "particularity" requirement is complied with, and that officers are not given unbridled discretion in executing the warrant.

*The "Good Faith" Exception*

 For the reasons set forth above, the warrant in this case was not supported by probable cause. However, such evidence may still be admissible under the "good faith" exception. "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Loy,* 191 F.3d at 367 (quoting *United States v. Leon,* 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). We conclude that in this case, the "good faith" exception to the exclusionary rule clearly applied.[5]

 The officer involved, Kevin Price, was extremely well-trained and experi-

3. Alternatively, for example, where there are legitimate security concerns related to the early disclosure of the affidavit, the triggering conditions could be restated on the face of the warrant.

4. "The likelihood that the evidence sought is still in place depends on a number of varia-

bles, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Tehfe,* 722 F.2d 1114, 1119 (3d Cir.1983).

5. There are four situations, none present here, in which an officer's reliance on a warrant would not be reasonable and would not trig-

enced. He is the leader of the Cambria County drug task force and is a former graduate and current faculty member of the Top Gun school. The affidavit contains many factual details and is clearly written—a far cry from a "bare bones" affidavit. The information about the earlier controlled buys from Glover's home, while stale, gave helpful background to indicate that he was a known drug dealer and thus increased the likelihood that evidence of a drug sale would be on the premises if the conditions were met. After officer Price drafted the affidavit of probable cause, an assistant district attorney reviewed and approved it. Thereafter, officer Price presented the affidavit to the Chief Judge of the Court of Common Pleas of Cambria County. This is a fairly new and intricate area of law without much guidance from the courts. Officer Price was clearly acting in good faith reliance on the legal advice he received from the district attorney and on the issuing judge's authorization.

*Leon,* though, presumes that reasonable officers will take reasonable efforts to keep up with developments in the law. "When the Supreme Court announced the good faith exception in *Leon,* it weakened the exclusionary rule, but it did not eviscerate it. Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Zimmerman,* 277 F.3d 426, 437–38 (3d Cir.2002) (citation omitted). We publish this opinion in the expectation that officers, prosecuting attorneys and issuing magistrates will adhere to the guidelines set forth in this opinion, and more importantly those enunciated in *Loy,* when confronted by anticipatory warrants in the future.

In accordance with the foregoing, defendant's motion to suppress evidence is DENIED.

---

ger the exception: (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *United States v. Williams,* 3 F.3d 69, 74 n. 4 (3d Cir.1993) (citations omitted).

**SEARCH WARRANT AND AUTHORIZATION**

**COUNTY OF** Cambria

| Docket Number (Issuing Authority): | Police Incident Number: 521-119-602 | Warrant Control Number: |
|---|---|---|

| Det. Kevin Price C.C.D.T.F., Cambria County Drug Task Force | (814)472-1481 | 09/18/2002 |
|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):
Any and all controlled substances, drug paraphernalia, U.S. currency and other items used in drug trafficking, financial records, owe sheets, firearms, and any and all fruits of crime, indicia of residents, materials that indicate positive to drug devices and or animals

*FILED FOR RECORD 02 SEP 18 PM 3: 52 CLERK CAMBRIA COUNTY*

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt.No., Vehicle, Safe Deposit Box, etc):
138 St Peters Street Loretto Pa 15940, a two story home with white siding and an enclosed front porch with yellow siding. The front porch has a "For Rent" sign on it. The residence is situated on the corner of St Peters Street and St Joseph's Street, Loretto Pa

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):
Patrick Kiel 5510 Grossrail Ct. Burke Va 22015 (occupant Keith Glover

| VIOLATION OF (Describe conduct or specify statute): Act 64 | DATE(S) OF VIOLATION: 06/25/2002 06/17/2002 Next 72 hrs |
|---|---|

☐ Warrant Application Approved By District Attorney-DA File No.
(If DA approval required per Pa.R.Crim.P. 2002A with assigned File No. per Pa.R.Crim.P. 107)

☒ Additional Pages Attached(Other than Affidavit of Probable Cause)

☒ Probable Cause Affidavit(s) MUST be attached(unless sealed below) Total number of pages: 6

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED

The below named Affiant,being duly sworn(or affirmed) before the issuing Authority according to law,deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

| | Cambria County Drug Task Force | 521 |
|---|---|---|
| Signature of Affiant | Agency or Address if private Affiant | Badge Number |

Sworn to and subscribed before me this 18 day of September 2002. Mag.Dist.No. 47 Judicial Dist.

_____ 200 S Center St. Courthouse, Ebensburg PA 15931 (SEAL)
Signature of Issuing Authority Office Address

**SEARCH WARRANT TO LAW ENFORCEMENT OFFICER:** WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☐ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*

☒ This Warrant shall be served as soon as practicable and may be served any time during day or night but in no event later than:**

11:59 P M, o'clock September 18, 2002.

\* The issuing authority should specify a date not later than two(2) days after issuance. Pa.R.Crim.P. 2005(g).
\*\* If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 2006(g).

issued under my hand this 18 day of September 2002 at 3:45 P M, o'clock.

_____ 47 Judicial District _____ January, 2004 (SEAL)
Signature of Issuing Authority Mag.Dist. or Judicial Dist.No. Date Commission Expires:

Title of Issuing Authority: ☐ District Justice ☒ Common Pleas Judge ☐ _____

☒ For good cause stated in the affidavits(s) the Search Warrant Affidavit(s) are sealed for 10 days by my certification and signature. (Pa.R.Crim.P. 2011)

_____ 47 Judicial Dis September 18 2002 (Date) (SEAL)
Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge).

AOPC 410A-10-24-98 (reproduction)

*TO BE COMPLETED BY ISSUING AUTHORITY*

## AFFIDAVIT OF PROBABLE CAUSE

1. This AFFIANT has been a licensed police officer in the Commonwealth of Pennsylvania for the past 10 years. This AFFIANT has served with the Cambria County Drug Task since 1997. This AFFIANT has made or been involved in over 200 narcotics investigations, which has lead to successful arrest and prosecutions for narcotics violations during my career as a case officer for the Cambria County Drug Task Force. This AFFIANT has received specialized narcotics training from several Federal, State, County and Local Agencies. This AFFIANT is also a graduate of "TOP GUN", and serves as a faculty member for "TOP GUN". This AFFIANT has also been an AFFIANT on over 30 search warrant and or Court Orders.

2. A confidential informant (herein after identified as C1) whose name, address and phone number is known to this AFFIANT and the Cambria County Drug Task Force, for fear of retaliation against his/her and their family, he/she wishes to remain anonymous except to this AFFIANT and the Cambria County Drug Task Force. C1 has supplied reliable information in the past that has proven credible and reliable and that has lead to arrests.

3. On 17 June 2002, this AFFIANT and the Cambria County Drug Task Force executed a controlled buy of HEROIN from a black male identified as "GLOVER", A.K.A. Keith GLOVER. Prior to the controlled buy, this AFFIANT met with C1, along with other Task Force Detectives. At this time C1 was strip searched by a designated Task Force Detective, and C1 vehicle was searched by a designated Task Force Detective. NO contraband or currency was found during either search. Following the searches, this AFFIANT photo copied a quantity of official funds. C1 and an undercover police officer left the designated area and drove to the Loretto area of Cambria County. There were NO stops or detours made on this trip. C1 and the undercover police officer arrived at St. Mary's Street in Loretto and parked in front of 212 St. Mary's Street. At this time C1 and the undercover police officer exited the vehicle and walked inside 212 St. Mary's Street. Once inside there was a black male standing inside the kitchen area. C1 introduced the undercover police officer to this same black male identified as "GLOVER". C1 asked GLOVER if there was anything going on , at which time GLOVER stated, "YEA, I have some stamps, good shit". GLOVER than walked into a back bedroom and stayed in this bedroom for less than a minute and returned. GLOVER than handed C1 one stamp bag marked 'BOYON" the undercover police officer witnessed this act. C1 asked how much, at this time GLOVER stated $ 25.00 a bag. The undercover police officer then pulled out the quantity of official funds. The undercover police officer stated we would take 4 bags of HEROIN for $ 100.00. GLOVER then walked back into the same bedroom and returned in less than a minute and the undercover police officer handed C1 the $ 100.00 of official funds. At this time C1 turned and handed GLOVER the $ 100.00 of official funds and GLOVER handed C1 4 bags of suspected HEROIN with the marking "BOYON". C1 then handed the 4 bags of suspected HEROIN to the undercover police officer. At NO time did the C1 leave the sight of the undercover police officer. The undercover police officer witnessed the entire transaction. Also there was an unknown black male that

*KJP* *NPC*

entered the residence during the transaction. This unknown black male did not take part in the transaction. C1 and the undercover police officer exited the residence and walked back to the vehicle and left the area. C1 and the undercover police officer drove to a designated area, there were NO stops or detours made on the return trip. C1 was strip searched by a designated Task Force Detective and C1 vehicle was again searched by a designated Task Force Detective. NO contraband or currency was found during either search. This AFFIANT then sealed the 4 glassine bags of suspected HEROIN and this evidence was eventually transported to the Pennsylvania State Police Crime Lab. in Greensburg. A lab report was provided as to the results of the evidence. Lab report # G02-03923-1 states, ITEM 1.1 four glassine packets of suspected HEROIN, CONCLUSION 1.1 weighed 0.13 grams of HEROIN a schedule I narcotic.

4. On 25 June 2002, this AFFIANT and the Cambria County Drug Task Force executed a controlled buy of HEROIN from a black male identified as "GLOVER", A.K.A. Keith GLOVER. Prior to the controlled buy, this AFFIANT met with C1, along with other Task Force Detectives. At this time C1 was strip searched by a designated Task Force Detective, and C1 vehicle was searched by a designated Task Force Detective. No contraband or currency was found during either search. This AFFIANT photo copied a quantity of official funds for this transaction. C1 and the undercover police officer then left a designated area and drove to the Loretto area of Cambria County. There were NO stops or detours made on this trip. C1 and the undercover police officer arrived at St. Mary's Street, Loretto and parked outside 212 St. Mary's Street. C1 and the undercover police officer than exited the vehicle and walked inside 212 St. Mary's Street. Once inside "GLOVER" was sitting in the living room. C1 asked GLOVER if he had some stamp bags at which time GLOVER stated,"YEA" the undercover police officer asked GLOVER if he had $ 200.00 worth. GLOVER stated he would have to check at which time GLOVER walked into a different bedroom than the bedroom in the transaction that took place on 17 June 2002. GLOVER stayed inside the bedroom for about one minute and then returned to the living room area. The undercover police officer than counted out the $ 200.00 of official funds and handed GLOVER the official funds. GLOVER then placed 6 bags of suspected HEROIN on a couch were the undercover police officer was sitting. The undercover police officer took possession of the 6 glassine bags of suspected HEROIN. During this transaction C1 never touched the suspected HEROIN or official funds and never left the sight of the undercover police officer. C1 and the undercover police officer than exited the residence and walked back to the vehicle and left the area. C1 and the undercover police officer drove to a designated area, there were NO stops or detours made on this trip. Once at this location C1 was again strip searched by a designated Task Force Detective and C1 vehicle was again searched by a designated Task Force Detective. NO contraband or currency was found during either search. This AFFIANT sealed the 6 glassine packs of suspected HEROIN into evidence. The evidence was eventually transported to the Pennsylvania State Police Crime Lab in Greensburg. A lab report was provided with the results, lab report # G02-04192-1 stated that the 6 glassine packets of suspected HEROIN, was in fact HEROIN a schedule I narcotic that weighs 0.21 grams.

*KJP JPC*

5. On 26 June 2002, This AFFIANT received information from the Cambria Township Police Department that they stopped a vehicle a 1986 Buick Skyhawk 4 door. This vehicle was bearing PA registration EPS-7544. The vehicle was owned by Keith GLOVER, the same person that is listed above. This vehicle was stopped for a traffic violation. During the traffic stop Officer Nate STOHEN conducted an investigation, during this investigation a small amount of suspected MARIJUANA was seized along with a large quantity of U.S. currency ($1,190.00) and an electric scale. Officer Nate STOHEN photo copied the U.S. currency and forwarded the U.S. currency to this AFFIANT. This AFFIANT matched the currency seized with the official funds used during the controlled buy on the 25 June 2002. A total of $ 140.00 was recovered out of the $ 200.00 of official funds used. The driver of the vehicle was taken into custody at which time the driver was identified as Roy Kenneth BINGHAM D.O.B. 03-29-1981, address 142 Faybern Court, Verona Pa. 15147. BINGHAM was processed by the Cambria Township Police Department and than transported to the Cambria County Prison. This AFFIANT was provided with BINGHAM information at which time a photo of Roy Kenneth BINGHAM was attached to the information. This AFFIANT was identified as the same person that entered 212 St. Mary's Street during the transaction that took place on the 17 June 2002.

6. On 8 Sept 2002, Detective Robert TUTKO of the Cambria County Drug Task Force received information that Keith GLOVER had moved from the 212 St. Mary's Street to a location in Loretto Boro. Upon receiving the information this AFFIANT and the Cambria County Drug Task Force learned that Keith GLOVER is now staying and or living 138 St. Peter Street, Loretto Boro, Cambria County.

7. We Anticipate in the next 72 hours, this AFFIANT and the Cambria County Drug Task Force will execute a controlled buy of CRACK COCAINE from a black male identified as Keith GLOVER. Prior to the controlled buy, this AFFIANT will meet C1 along with other Task Force Detectives. At this time C1 will be strip searched by a designated Task Force Detective and C1 vehicle will be searched by a designated Task Force Detective. This AFFIANT will insure NO contraband or currency will be found during either search. This AFFIANT will provide C1 a quantity of official funds for this transaction. C1 and the undercover police officer will drive to the Loretto area of Cambria County. There will be NO stops or detours made on this trip. Once in Loretto, C1 and the undercover police officer will park outside of a residence at 138 St. Peter Street, Loretto Boro. This home does not have an address displayed. There is the word "ONE" on top of the front door, also the home is a two story white sided home with a yellow closed in front porch. Note see attachment "A". According to the information received from the local fire company the address is in fact 138 St. Peter Street. C1 will exit the vehicle and be observed walking into the front door of the residence. C1 will stay inside this same residence for less than 5 minutes at which time the CI will exit 138 St. Peter Street, Loretto Boro, and walk back to the vehicle and the undercover police officer. Once at the vehicle C1 enters the vehicle and turns over a plastic baggie containing suspected CRACK COCAINE. C1 and the undercover police officer will exit the area and drive to a designated location, there will be NO stops or detours made on this trip. Once at this location C1 will be strip searched by a designated Task Force Detective and C1 vehicle will be searched. This AFFIANT will insure that NO contraband or currency will be found during either search. This AFFIANT will field test the suspected CRACK COCAINE by using a NARK test kit # 4. Assuming the result of the test is positive for

*KJP* */PC*

COCAINE. This AFFIANT will continue this investigation as outlined in this application.

8. Based upon the foregoing information and the totality of circumstances of the information outlined in this affidavit, this AFFIANT believes that if the occurrence as anticipated and outlined in number 7 above, probable cause exists for the issuance of an ANTICIPATORY SEARCH WARRANT to be executed during day time hours or night time hours, at the residence of 138 St. Peter Street Loretto. The residence is a two story single dwelling, with white siding on the residence with a closed in yellow front porch, also a word "ONE" on top of the front door. The triggering event is to be when C1 enter's the residence of 138 St. Peter Street, Loretto Boro, with official funds and meets with Keith GLOVER, A.K.A. "GLOVER", and exit the same listed residence. C1 than will turn over a quantity of suspected CRACK COCAINE, and this suspected CRACK COCAINE will be field tested and a positive reading for COCAINE will appear.

_____ 9-18-02
AFFIANT DATE

_____ 9/18/02
ASSISTANT DISTRICT ATTORNEY DATE

_____ September 18, 2002
ISSUING AUTHORITY DATE

9-17-02

138
st peter st
LoneHo