FUENTES, Circuit Judge:
Appellant Kevin Patrick Flood (“Flood”) challenges his conviction and sentence for conspiracy to possess and distribute marijuana, possession with intent to distribute marijuana, and possession of a firearm by a convicted felon. Flood was found guilty on all three counts and was sentenced to 180 months in prison for the marijuana offenses and 120 months in prison for the firearm offense, with the terms to run concurrently. On appeal, Flood argues that his motion to suppress evidence seized during the execution of an anticipatory search warrant was improperly denied because the warrant did not satisfy the requirements of probable cause. Further, Flood argues that he was improperly denied the ability and resources to test audio evidence introduced by the Government, and that the Court erred in allowing the Government to offer evidence of a prior drug conviction. Finally, he argues that the District Court improperly raised his guidelines range based on possession of a weapon, his status as “manager” of the marijuana conspiracy, and a prior guilty plea in which he was allegedly not represented by counsel. Because we find that the District Court committed no legal or factual error and did not abuse its discretion, we will affirm.
*212 I.
Because we write only for the parties, we discuss only those facts relevant to our conclusion. In 2008, the Pennsylvania State Police began an investigation into a marijuana distribution network in Blair County and the surrounding region. Through this network, individuals in Blair County obtained hundreds of pounds of marijuana transported from the west coast through deliveries by a courier. Flood was a participant in this network. In the 1980s, while living in California, Flood became friends with various marijuana suppliers, one of whom was Keith Brubaker (“Brubaker”). Both Flood and Brubaker ultimately moved back east and started distributing marijuana in Pennsylvania. The marijuana would be delivered to Flood’s Pennsylvania residence, and from there, Brubaker and others would divide the marijuana for allocation to local distributors. One buyer also witnessed Flood purchase a firearm for 1/4 pound of marijuana.
Brubaker was eventually arrested for possession of marijuana. He agreed to act as a confidential informant, and consented to wear a recording device to record conversations he had with Flood. In the weeks following Brubaker’s arrest, Bru-baker and Flood had conversations about additional shipments of marijuana that were allegedly en route. One shipment was supposed to arrive on April 5, 2004, and another four days later, but the first was redirected and the other was delayed. Soon thereafter, however, Brubaker learned that a third shipment had not been delayed or rerouted, and was on its way to Flood’s residence. Brubaker then contacted Trooper Schaefer, the officer in charge of the investigation, who in turn applied for and obtained an anticipatory search warrant for Flood’s residence.[1] Pursuant to the warrant, Brubaker was instructed to confirm the arrival of the shipment and report to Trooper Schaefer the number of individuals and number of pounds of marijuana in the home. Once the shipment arrived, Brubaker called Trooper Schaefer and informed him of the information required by the warrant. The police then moved in, secured the residence, and arrested Flood. The police found 532.2 pounds of marijuana, $25,000 in cash, various weight measurement devices, and a loaded handgun wrapped in cloth inside a drawer. Flood was read his rights and confessed to possession of and intent to distribute marijuana.
Before trial, Flood filed a timely motion to suppress the evidence gathered in connection with the search. The District Court denied this motion. Also before trial, but in a much less timely fashion, Flood moved to suppress and/or test the audio tapes of the recorded conversations with Brubaker. The District Court denied this motion as both untimely and non-meritorious. A trial commenced, and Flood was convicted on all three counts.
At sentencing, the District Court determined that Flood’s guideline range was between 151 and 188 months. Rejecting a motion by the Government for an upward departure, the Court sentenced Flood to 180 months imprisonment for the marijuana counts, and a concurrent 120 months for the gun count. This appeal from both the conviction and sentence followed.
II.
We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). Our review of the District *213 Court’s decision denying Flood’s motion to suppress for lack of probable cause is plenary. United States v. Loy, 191 F.3d 360, 365 (3d Cir.1999). We review the District Court’s refusal to allow Flood to conduct tests on the audio evidence, its admission of Flood’s prior felony drug conviction under Fed.R.Evid. 404(b), and its balancing of the probative value and prejudicial nature of the evidence under Fed.R.Evid. 403, for abuse of discretion. United States v. Hayden, 64 F.3d 126, 128 (3d Cir.1995). In regard to Flood’s challenges to his sentencing, we review the factual findings of the District Court — such as whether Flood was a “manager” of the conspiracy — for clear error, but review the District Court’s legal conclusions — such as whether Flood’s prior guilty plea was properly used in calculating his criminal history score — de novo. United States v. Katora, 981 F.2d 1398, 1401 (3d Cir.1992).
III.
A.
We first address Flood’s argument that Trooper Schaefer’s warrant affidavit was not supported by probable cause. United States v. Grubbs, 547 U.S. 90, 94, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006). An anticipatory search warrant must show that evidence of a crime will be on the described premises when the warrant is executed, which may be some time in the future. Id. at 96, 126 S.Ct. 1494. In the cases of an anticipatory search warrant conditioned on a triggering event, the warrant requires two distinct types of probable cause. First, the magistrate issuing the warrant “must find, based on facts existing when the warrant is issued, that there is probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed.” Loy, 191 F.3d at 365. Second, the magistrate must find that there is probable cause to believe that the triggering event or events will actually occur. Grubbs, 547 U.S. at 96-97, 126 S.Ct. 1494.
Flood contends that Trooper Schaefer “had no idea when the marijuana was to be delivered,” principally because the warrant was the third one procured in a three week period. Because the triggering conditions for two previous warrants did not occur, and because Trooper Schaefer’s only source of information was Brubaker (who, Flood argues, lacked credibility), Flood argues that Schaefer did not have probable cause to believe that the triggering events enabling the use of the warrant would ever take place. We are not persuaded by these arguments. Brubaker was a credible informant — he had been co-operating with the government for a significant period leading up to the issuance of the third warrant, and the veracity of many of his statements could be corroborated by the recording device he was wearing. He updated the government on the status of each of the three shipments as they crossed the country and promptly informed the officers when he received information about the two shipments that were diverted along their respective routes. With the third delivery, Brubaker had credible knowledge that the marijuana had physically entered Blair County and was on its way to Flood’s home. Accordingly, we agree with the District Court that Trooper Schaefer was entitled to rely on Brubaker’s information in establishing the likelihood of the triggering event. Moreover, as the Government points out, Trooper Schaefer did not need to establish with firm certainty that the triggering conditions would occur — probable cause merely requires a “fair probability” that the conditions would be met. Grubbs, 547 U.S. at 95, 126 S.Ct. 1494 (“Probable cause exists when ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’” (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 *214 S.Ct. 2817, 76 L.Ed.2d 527 (1983))). Because we believe that Trooper Schaefer presented sufficient reliable information for the Magistrate to properly issue the anticipatory search warrant, no suppression is warranted.
B.
We now turn to Flood’s assertion that the District Court abused its discretion in denying his request to test the audio recordings introduced as evidence at trial by the government. Flood filed his request to test the evidence eight months before trial — well over a year after the filing deadline for pretrial motions. Moreover, Flood provided no basis for believing that testing was necessary, and even his counsel stated that the authenticity of the tapes, despite doubts about Brubaker’s trustworthiness, was not a legitimate issue for the District Court. The District Court thus rejected Flood’s motion, holding it both untimely and non-meritorious.
We agree with the District Court that by filing his motion in an untimely manner and failing to provide a basis for believing that testing was necessary, Flood waived his right to request testing. However, even if we were to look to the merits of Flood’s arguments, we agree with the District Court that the authenticity and accuracy of the evidence precluded the need to authorize funding for expert testing. Flood has fallen far short of rebutting the presumption that the evidence in question was authentic; nor has Flood carried his burden of showing that the denial of testing unfairly disadvantaged his case or that expert testimony would have been necessary to present an adequate defense. See United States v. Stewart, 104 F.3d 1377, 1383 (D.C.Cir.1997); United States v. One Feather, 702 F.2d 736, 738 (8th Cir.1983). Accordingly, we hold that the District Court did not abuse its discretion in denying Flood’s motion to test the audio evidence.
C.
Flood also contends that the District Court improperly admitted evidence of his 1992 drug conviction for possession with intent to distribute a controlled substance. We disagree. As outlined by the Supreme Court, we look to the requirements of Federal Rule of Evidence 404(b) to ensure that the prior conviction was admitted for a proper purpose, and then conduct the balancing test set out in Federal Rule of Evidence 403 to determine whether the probative value of the evidence substantially outweighed its potential for unfair prejudice. Huddleston v. United States, 485 U.S. 681, 691-92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); United States v. Vega, 285 F.3d 256, 261 (3d Cir.2002). The District Court considered the strictures of Rule 404(b) and concluded that the evidence was, inter alia, relevant to the issue of intent, as the government was required to demonstrate that Flood intended to distribute the marijuana in question (particularly in light of his argument that he was framed). In addition, the District Court properly instructed the jury that it was not permitted to draw inferences about character and propensity from this evidence. Flood’s arguments that the jury could' not be relied on to follow these instructions are not persuasive and are not supported by the record. See United States v. Givan, 320 F.3d 452, 462 (3d Cir.2003). The District Court then conducted the required balancing considerations, finding that the evidence of Flood’s prior drug use was too prejudicial to be admitted, but reaching the opposite conclusion in regard to the 1992 conviction. We see no abuse of discretion in this decision. Moreover, given the sheer volume of evidence against Flood, we conclude that the jury’s determination could not have been meaningfully altered by the evidence of his conviction, even if it had been improperly admitted. Any abuse of discretion, therefore, would have been harmless. United *215 States v. Gricco, 277 F.3d 339, 354 (3d Cir.2002).
D.
Next, Flood argues that his offense level was improperly adjusted upwards for possession of a firearm during his drug offense. Pursuant to the United States Sentencing Guidelines (“U.S.S.G.”), a two-level adjustment should be applied when a weapon is “present,” unless it is “clearly improbable” that the weapon was involved in the offense. U.S.S.G. § 201.1(b)(1). The firearm in question was found in a dresser drawer in Flood’s home. It was loaded, wrapped in a piece of cloth, and secured with a gun lock. In assessing whether it was clearly improbable that the weapon was connected to the offense, we have considered various factors, including the type of gun, whether the gun was loaded, whether it was accessible, and whether it was stored near the contraband, in making this determination. United States v. Drozdowski, 313 F.3d 819, 822-23 (3d Cir.2002). Given our review of these factors, the nature of Flood’s enterprise, and his express statement that he possessed the gun because “you never know,” we find no clear error in the District Court’s determination that it was not “clearly improbable” that the weapon was connected to Flood’s charged offenses. Accordingly, we will uphold the two-level enhancement.
E.
Flood argues that the three-level enhancement imposed by the District Court pursuant to U.S.S.G. § 3Bl.l(b) for his managerial role in the marijuana conspiracy was improper on the grounds that he did not actually “manage” the conspiracy and that he did not claim a right to higher profit than other members.[2] Although Flood was not in a strict sense superior to the other conspirators, his role in the offenses was not equal to the others. The record indicates that Flood bore a central role in the operation of the conspiracy, and was the only conspirator that was situated such that he could act as a coordinator and organizer of the operation. Flood had the connections to the marijuana suppliers: it was he—not his local partners—who communicated with the distributors. The hub of the drug trafficking operation was Flood’s own home: as a result, it was Flood who commanded the couriers on when and how to make deliveries, effectively managing and controlling important participants in the operation. See United States v. Katora, 981 F.2d 1398 (3d Cir.1992) (holding that the District Court must find that defendant exercised control of at least one other person to warrant three-level enhancement). Accordingly, even though Flood did not receive a higher profit for his role in the offense, we agree with the District Court that the leadership and supervision he exercised warranted the three-level enhancement.
F.
Finally, Flood claims that the District Court abused its discretion when it added two points to his criminal history score based on his 1996 California conviction. He claims that he did not freely and voluntarily waive his right to representation during these proceedings, and thereby objects to the District Court’s use of the conviction for the purpose of enhancing his criminal history score. Specifically, he asserts that the probation officer failed to procure the official court records concerning that conviction in order to determine *216 whether or not he was represented by counsel. Further, he challenges the District Court’s placement of the burden of production with respect to the representation issue on him, calling it “burden-shifting.”
We find that the District Court properly placed the burden of showing the conviction to be invalid on Flood. United States v. Jones, 332 F.3d 688, 697-98 (3d Cir.2003). While Flood objects to the District Court’s reliance on Jones, he does not provide any basis for this objection other than the disparity in resources between the Government and himself. An allegation of disparity in resources is not enough to overcome the strong presumption that the prior plea was valid. Accordingly, we uphold the District Court’s enhancement of Flood’s criminal history score based on his 1996 California conviction.
IV.
For the foregoing reasons, we affirm judgment of the District Court as to both Flood’s conviction and his sentence.

. This was the third anticipatory search warrant that Trooper Schaefer obtained. He also applied for warrants on the two previous shipments, but because the shipments did not make it to Flood's residence, they were never "triggered.”

. Flood also argues that because there were not five other members of the conspiracy, the enhancement cannot be applied. Since five individuals were either convicted or pled guilty in connection with the conspiracy, this argument is meritless.