NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3702
_____

UNITED STATES OF AMERICA

v.

RAYMOND A. RABREAU a/k/a J.P.

Raymond A. Rabreau,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 04-cr-00036-4J)
District Judge: Honorable Kim R. Gibson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 15, 2010

Before: FISHER and COWEN, *Circuit Judges*, and DITTER,[*] *District Judge*.

(Filed: April 20, 2010)
_____

OPINION OF THE COURT
_____

[*]Honorable J. William Ditter, Jr., Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Raymond Rabreau appeals his conviction for conspiring to distribute and possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Rabreau argues that the District Court erred in denying his motion to suppress evidence seized pursuant to an anticipatory search warrant. Because the "law of the case" doctrine precludes our review, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 2003, the Pennsylvania State Police began an investigation, headed by Pennsylvania State Trooper Charles Schaeffer, into a large-scale distribution network of marijuana in and around Blair County, Pennsylvania, from various sources in California and other western states. Keith Brubaker, a chief participant in the distribution network, agreed to act as a confidential informant after his arrest in early March 2004. Over the next several weeks, the police monitored conversations between Brubaker and co-defendant Kevin Patrick Flood regarding an incoming shipment of marijuana.[1] The shipment was originally scheduled to arrive on April 5, 2004, but was delayed multiple

_____

[1]The conversations between Brubaker and Flood indicate that Flood's drug use resulted in some erratic behavior, including standing in the rain in his underwear due to fears that something was inside his house.

2

times. Accordingly, Trooper Schaefer's first two anticipatory search warrants were not executed because one of the triggering conditions – the arrival of marijuana – had not occurred.

Finally, on April 11, 2004, at approximately 6:45 a.m., Brubaker called Trooper Schaefer and informed him that Flood had indicated that the drug courier was in route to his residence. Trooper Schaefer promptly applied for and obtained a third anticipatory search warrant.[2] Under the terms of the warrant, the police were allowed to search Flood's residence if four triggering events occurred: (1) the marijuana arrived, (2) Brubaker met with Trooper Schaefer, (3) Brubaker entered Flood's residence, and (4) Brubaker telephoned Trooper Schaefer to confirm the presence of marijuana inside the home.

At approximately 11:00 a.m., after all of the triggering events had occurred, the Pennsylvania State Police entered Flood's home. During the course of their search, the police uncovered about 241.4 kilograms of marijuana, approximately $25,000 in cash, a loaded handgun, and various weight scales and packaging items. The police then took those adults present inside the home, including Rabreau, into custody. Rabreau had been asleep with his girlfriend in a bedroom where no marijuana was found.

---

[2]All three anticipatory search warrants were issued by Judge Elizabeth A. Doyle of the Pennsylvania Court of Common Pleas of Blair County.

A grand jury sitting in the Western District of Pennsylvania indicted Rabreau, Flood, and three other co-defendants in a four-count indictment. Rabreau was charged solely with conspiring to distribute and possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial,[3] Rabreau joined co-defendant Flood's motion to suppress the evidence seized under the anticipatory search warrant based on the argument that Trooper Schaefer did not have probable cause to believe that the triggering events would occur. The District Court denied the motion: the Court held that (1) Rabreau did not have standing because Rabreau did not have a legitimate expectation of privacy in the Flood residence, and (2) there was a substantial basis for the judge's finding that there was probable cause that the triggering events would occur.

Both Rabreau and Flood were convicted,[4] and each timely appealed. This Court affirmed Flood's conviction in *United States v. Flood*, 339 F. App'x 210 (3d Cir. 2009), where we held that the District Court did not err in denying Flood's suppression motion: "Trooper Schaefer presented sufficient reliable information for the [Judge] to properly issue the anticipatory search warrant[.]" *Id.* at 213-14.

---

[3]Rabreau and Flood pled not guilty and proceeded to trial; the other three co-defendants pled guilty to various charged offenses.

[4]Rabreau was sentenced to 120 months of imprisonment, followed by 8 years of supervised release.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review over the court's legal determinations. *United States v. Shields*, 458 F.3d 269, 275-76 (3d Cir. 2006). However, "[u]nder the law of the case doctrine, one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). "The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." *Id.* at 717-18. As the doctrine is discretionary, we have stated that "extraordinary circumstances" may warrant a court's reconsideration when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Research Group of N.J., Inc. v. Magnesium*, 123 F.3d 111, 116-17 (3d Cir. 1997).

III.

Although co-defendant Flood already unsuccessfully appealed the District Court's denial of the defendants' motion to suppress, Rabreau argues that the *Flood* decision should not be applied to his appeal. First, Rabreau contends that application of the law of the case doctrine would create manifest injustice. Second, Rabreau claims that the issue

5

warrants reconsideration because Rabreau's and Flood's arguments are not identical. We will address each contention in turn.

A.

Rabreau argues that the *Flood* decision was "clearly erroneous" and thus that an application of that decision "would create manifest injustice," one of the exceptions to the law of the case doctrine that we articulated in *Magnesium*, 123 F.3d at 117. More specifically, Rabreau contends that Trooper Schaefer did not provide Judge Doyle with sufficient information to determine that there was probable cause that the triggering conditions would occur.

The Supreme Court has stated that two prerequisites of probability must be satisfied for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause: "It must be true not only that if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' but also that there is probable cause to believe the triggering condition will occur." *United States v. Grubbs*, 547 U.S. 90, 96-97 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The supporting affidavit must provide the [judicial officer] with sufficient information to evaluate both aspects of the probable-cause determination." *Id.* at 97.

Probable cause determinations are governed by a totality-of-the-circumstances analysis:

6

"The task of the issuing [judicial officer] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Gates*, 462 U.S. at 238. A judicial officer "need not conclude that it was 'more likely than not' that the evidence sought was at the place described." *United States v. Bond*, 581 F.3d 128, 139 (3d Cir. 2009) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Finally, on appeal, the reviewing court must determine whether the judicial officer had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39.

We agree with the *Flood* court that Judge Doyle had a substantial basis for concluding that there was probable cause that the triggering events would occur. Trooper Schaefer was able to provide Judge Doyle with a thorough affidavit because Brubaker, a primary participant in the marijuana distribution network, gave Trooper Schaefer detailed eyewitness information, which Trooper Schaefer was oftentimes able to corroborate with a recording device. Rabreau's arguments to the contrary rely on the contention that Flood, the ultimate source of the affidavit's information, was unreliable. We disagree. Flood's cocaine use and resulting erratic behavior would not necessarily make his information regarding an impending drug delivery suspect. Furthermore, Flood's repeated postponement of the delivery date reflected detailed knowledge of last minute modifications made during the transportation of contraband, not a lack of knowledge indicating unreliability.

7

Because we find that the warrant was supported by probable cause, we do not find that the *Flood* decision was erroneous, much less "clearly erroneous." *Magnesium*, 123 F.3d at 117. Accordingly, this law of the case doctrine exception does not apply.

B.

Rabreau also argues that we should reexamine the probable cause issue because Rabreau's arguments are not identical to those previously raised by Flood. This distinction does not merit reconsideration.

As discussed earlier, "extraordinary circumstances" may warrant an exception to the law of the case doctrine when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 116-17. Although we have not explicitly stated that this list is exhaustive, we will not add an additional exception for novel arguments. To do so would enable the exception to swallow the rule, as almost any litigant would be able to articulate at least one reason why his or her arguments are unique. The goals of the doctrine – "finality, judicial economy and jurisprudential integrity" – would be drastically undermined. *In re City of Phila. Litig.*, 158 F.3d at 717-18.

Therefore, applying the law of the case doctrine, we hold that our sound decision in *Flood* precludes our review of Rabreau's appeal.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of

conviction.[5]

_____

[5]Because we find that the law of the case doctrine precludes our review, we need not address Rabreau's arguments that he had a reasonable expectation of privacy as a guest at the Flood home.