**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1936
_____

KEVIN PATRICK FLOOD,
                                                    Appellant

v.

SUPERVISOR TROOPER CHARLES SCHAEFER;
TRP. DAVID SNYDER; CORPORAL RANDY ZIMMERMAN
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-06-cv-00082)
District Judge:  Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 2, 2018

Before:  CHAGARES, BIBAS and GREENBERG, Circuit Judges

(Opinion filed: November 8, 2018)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Kevin Flood appeals from the judgment of the United States District Court for the Western District of Pennsylvania entered following a jury trial in his civil rights action filed pursuant to 42 U.S.C. § 1983. For the following reasons, we will affirm.

This is the fourth time that this case has been before this Court. See Flood v. Schaefer, 240 F. App'x 474 (3d Cir. 2007); Flood v. Schaefer, 367 F. App'x 315 (3d Cir. 2010); Flood v. Schaefer, 439 F. App'x 179, 182 (3d Cir. 2011). We assume familiarity with these decisions here. Briefly, Flood was arrested by Pennsylvania State Police (PSP) officers investigating a marijuana distribution network. He was subsequently charged and convicted by federal authorities for conspiracy to possess and distribute marijuana, possession with intent to distribute marijuana, and possession of a firearm by a felon. We affirmed his judgment of sentence on direct appeal, holding, in part, that the District Court had not erred in denying Flood's pre-trial motion to have certain audio surveillance tapes tested to confirm their authenticity. United States v. Flood, 339 F. App'x 210, 214 (3d Cir. 2009). The tapes included weeks of conversations between Flood and Keith Brubaker, a PSP confidential informant. We agreed with the District Court that Flood had missed the deadline for filing pretrial motions, and had not otherwise established any basis for the testing, noting that "the authenticity and accuracy of the evidence precluded the need to authorize funding for expert testing. Flood has

2

fallen far short of rebutting the presumption that the evidence in question was authentic[.]" Id.[1]

While a pre-trial detainee, Flood filed this suit against PSP officers and Brubaker, alleging various constitutional claims stemming from his arrest and interrogation, including that his 10-hour detention during his interrogation was unreasonable where "police were aware that he had a severe back injury and handcuffed him in a manner that caused excessive pain and suffering." Flood, 367 F. App'x at 319. The last time the matter was before us, we remanded to the District Court for further proceedings on this excessive force claim, and for the District Court to consider Flood's objections to the Magistrate Judge's order denying his motion to compel.

In his motion to compel, Flood sought production of "accurate and complete 1:1 copies" of the "original" audio surveillance tapes because the copies of the tapes he had received from defendants were "altered and tampered with before 'and after' he filed this excessive force case." Specifically, he alleged that statements which would confirm that defendants were aware, prior to his interrogation, that he had a back injury prior to his interrogation, and that Brubaker was providing drugs (OxyContin and Fentanyl) to Flood to alleviate the pain, had been deleted from his copies. Flood requested that the court appoint a "neutral forensic" to make copies of the tapes to test them for "deletions."

---

[1] Flood filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 arguing, inter alia, that his trial counsel were ineffective for failing to timely request the testing of the audiotapes, and to seek exclusion of the audiotapes on the ground that they had been tampered with. The District Court denied the motion, and we declined to issue a certificate of appealability. See United States v. Flood, 2014 WL 2114849, at *4 (W.D. Pa. May 20, 2014, No. 04-cr-0036); C.A. No. 14-2902.

3

The District Court determined on remand that Flood was entitled to the tapes because they were relevant to his case, but that he had already received "accurate" copies of the tapes and transcriptions of their contents in his criminal case. District Ct. Docket #165. The Court would not compel their production a second time because copies of the original tapes "would provide no information Flood does not already have available to him." The Court found that, to the extent Flood sought to establish that the tapes were tampered with, he was precluded from raising that issue because it would "call into question the validity of his criminal conviction." It also found his claim that the tapes were altered by his court-appointed counsel to be "utterly baseless."

The case went to trial on the excessive force claim, and the jury rendered a verdict in favor of defendants. Flood appeals the adverse judgment, arguing that the District Court committed reversible error in denying him access to the original audio tapes.

We exercise jurisdiction over this matter pursuant to 28 U.S.C. § 1291. We review the District Court's discovery rulings for abuse of discretion. Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983). To find such abuse, we must conclude that it "interfere[d] with a 'substantial right'" of Flood or constituted "a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." Id. (citations omitted).

We find no basis to conclude that the District Court abused its discretion in denying production of copies of the original audio tapes. We agree with Appellees that the basis for the motion to compel – Flood's claim that his copies of the audiotapes were

4

inaccurate[2] – was barred by the doctrine of issue preclusion.  There are four essential

elements of issue preclusion: (1) an issue decided in a prior action is identical to the one

presented in a later action; (2) the prior action resulted in a final judgment on the merits;

(3) the party against whom issue preclusion is asserted was a party to the prior action; and

(4) the party against whom issue preclusion is asserted had a full and fair opportunity to

litigate the issue in the prior action.  Jones v. United Parcel Serv., 214 F.3d 402, 405 (3d

Cir. 2000).  Issues determined in criminal proceedings can have preclusive effect in

subsequent civil proceedings.  See Emich Motors Corp. v. General Motors Corp., 340

U.S. 558, 568 (1951); see also Glantz v. United States, 837 F.2d 23, 25 (1st Cir. 1988)

(recognizing that issue preclusion applies to a federal civil rights action following a

federal criminal proceeding).

---

[2] Although Flood contends that his motion to compel is not about tampering, but rather about his due process right to original copies of the micro-cassettes, he has repeatedly premised his right to those copies on the alleged inaccuracy of the tapes due to tampering. See District Court Docket ##116, 144, 164, & 167.  The motion to compel is Flood's latest attempt to litigate his contention that the audiotapes presented at his criminal trial differed from those he had heard, two years prior, with his attorney Phil Robertson.  He has maintained throughout pleadings in his criminal and civil proceedings that the "new copies" of the tapes were tampered with to delete statements which would exculpate him from criminal liability, and inculpate defendants in the use of excessive force. See Flood, 2014 WL 2114849, at *2-6; In re Flood, 600 F. App'x 867, 867-68 (3d Cir. 2015).  The broad scope of the tape tampering conspiracy includes allegations that (1) Robertson "sold him out" by turning over their copies of the audiotapes to Schaefer so he could delete portions which would be used against him at the civil trial, and make copies which would comport with the tapes presented at the criminal trial; (2) William McCabe, his subsequent court appointed counsel, withheld evidence of the tampering from the trial court; and (3) Assistant United States Attorney (AUSA) Valkovci and Judge Gibson, who presided over his criminal trial, condoned the tampering. See Flood, 2014 WL 2114849, at *4.

Prior to the criminal trial, Flood's counsel challenged the authenticity of the audiotapes. "[I]n light of the key role the audio recordings were expected to play" at the criminal trial, the trial court held a hearing pursuant to United States v. Starks, 515 F.2d 112 (3d Cir. 1975), to determine their authenticity and accuracy.[3] United States v. Flood, 2007 WL 1314612, at *12 (W.D. Pa. May 4, 2007, No. 04-cr-00036). At the hearing, which was held after jury selection had completed, Schaefer testified that he, not Brubaker, handled the micro-cassettes at the time of the recordings. He explained the steps he took to preserve the recordings, including marking them prior to reproduction and sealing them immediately thereafter. He testified as to the chain of custody. Trooper Dennis Drake testified regarding the process by which he made "working copies" of the microcassettes on audiotapes.[4] He explained that he made no alterations to the originals, and the result was a "one-to-one dubbing" from the micro-cassette to the audio cassette. The witnesses were cross-examined by Flood's counsel.

Based on the evidence at the hearing, the trial court determined that the Stark factors had been met, and that there was clear and convincing evidence that the micro-cassettes were "authentic and correct." United States v. Flood, 2007 WL 1366782, at *2

---

[3] In Starks, we approved a seven-part test for a court to consider in admitting surreptitiously recorded evidence, including a determination that "changes, additions or deletions have not been made in the recording." 515 F.2d at 121 n.11. The Government must "produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." Id. at 121.

[4] These audiotape copies were used by the AUSA to provide copies and transcripts to Flood's counsel during the criminal trial.

(W.D. Pa. May 8, 2007, No. 04-cr-00036).  In making this determination, the court relied on Schaeffer's testimony that he had "broke[n] the tabs out" of the micro-cassettes immediately after Brubaker completed his conversation with Flood, thereby preventing any further recording or alterations to them.  Id.  It also noted that Brubaker, who had spoken to Flood hundreds of times, had identified his voice on the recordings.  The trial court further found that the tapes had been properly preserved; it credited Schaeffer's testimony that the tapes remained in official custody at all times, and were both marked and sealed.  As noted *supra*, we agreed with the trial court on direct appeal that the tapes had been shown to be accurate and authentic.  Flood, 339 F. App'x at 214.

The trial court's findings preclude Flood's claim that the "new copies" of the tapes were inaccurate because they have been significantly altered.  Flood has consistently maintained that the alleged alterations of the audiotapes occurred *prior* to his criminal trial.  Indeed, Flood first made the tampering allegations in response to hearing the tapes played at his criminal trial and believing them to be missing statements he heard on the copies the Government had provided to Robertson.  See Flood's 5/14/07 Informal Complaint, District Ct. Docket #31, Exh. 1.  The trial court's determination that the micro-cassette tapes played at his criminal trial were accurate and authentic forecloses his claim that the "new copies" are inaccurate because they do not contain the deleted portions.[5]  Because the alleged tampering was the basis for the motion to compel

---

[5] We can dispense quickly with Flood's argument that the District Court erred in determining that he had *any* copies of the audiotapes.  Throughout his pleadings, he argued that he needed copies made from the originals because *his* copies of the tapes – which were provided to his counsel during the criminal trial – were altered and

production of the original tapes, the District Court did not abuse its discretion in denying it.[6]

Even assuming that the claim was not precluded, we would find no abuse of discretion in the denial of the motion to compel as Flood simply failed to substantiate his tampering allegations. He maintained that a forensic expert, Roger Boyell, analyzed his copies of the audiotapes and concluded that one of them (tape #7) was "significantly altered." McCabe had asked Boyell to determine "if there exists any evidence on the tape that any portion of the originally recorded phone conversation was deleted therefrom." District Court Docket #184, Exh. 4. Boyell did indicate that the tape's "recorded signal is too weak (far below normal 'operating level') to extract meaningful information." He did not conclude, however, that there had been any editing or alteration; he noted that the tape had an "artifact within the conversation which is similar to the intentional stop-start signature at the beginning of the conversation," which "may or may not indicate editing was performed." Boyell concluded that he would need "a complete 1:1 copy of the original recording" to *evaluate* his spoliation claim. Thus, Boyell's letter did not support

---

inaccurate. He further maintained that he could not get his prior counsel to provide him with copies of the tapes that were accurate. To the extent that he later claimed he had no copies of the tapes, the record indicates that he refused to accept replacement copies (and transcripts) of the audiotapes prior to trial because he expected access to the micro-cassettes. See District Court Docket #351 at 211. Ultimately, the audiotapes were not presented as evidence in the civil trial; the parties instead used redacted transcripts of the audiotapes.

[6] In light of our conclusion that the claim is barred by issue preclusion, we need not reach the issue of whether the claim is otherwise barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

Flood's claim that the tapes had been tampered with to delete portions or otherwise make them inaudible.

On appeal, Flood claims that Schaefer confirmed the tampering by testifying at the civil trial that statements are missing from conversations on the audiotapes. This mischaracterizes his testimony. Schaefer did not testify that portions of conversations were missing from the audiotape; he testified that the transcript of an audiotape was missing sections of the conversation because they were inaudible and could not be properly transcribed. This was consistent with Judge Gibson's findings in the criminal proceeding, findings that were made after listening to copies of the micro-cassettes to determine their audibility. In a Memorandum Opinion and Order granting in part and denying in part Flood's motion to suppress the audiotapes, Judge Gibson found that certain portions were "unintelligible," although they were not so substantial as to render the recordings "as a whole untrustworthy." See District Ct. Docket 04-cr-00036, #149, pg. 34 (citation omitted).

Flood presents two other issues for review. First, he argues that the District Court erred in denying his "Motion for Judgment on the Pleading for Spoiation (sic) of Evidence Sanctions." In his motion, Flood maintained that he was entitled to judgment on the pleadings as a sanction for the tampering of evidence, and for the failure of Judge Gibson and the magistrate judge to provide him with the "1:1 copies of the original tapes." Because his allegations of evidence tampering were unsubstantiated, and his motion to compel was properly denied, Flood was not entitled to spoliation sanctions. See Bull v. United Parcel Service, Inc., 665 F.3d 68, 73 & n.5 (3d Cir. 2012).

9

Next, Flood claims that Judge Gibson should have recused himself from ruling on the motion to compel and related motions associated with his efforts to obtain "accurate and complete" copies of the micro-cassette tapes. Flood filed a motion pursuant to 28 U.S.C. §§ 144, 455, seeking Judge Gibson's recusal based on actual bias, and the appearance of bias, *after* the motion to compel was denied. Nevertheless, pursuant to § 455, a district judge is required to recuse himself *sua sponte* if his "impartiality might reasonably be questioned." Flood argues, in part, that, because Judge Gibson presided over the Stark's hearing, he had "personal knowledge that defendant Schaefer did not turn over the original tapes to AUSA VALKOVCI," and that his ruling at the hearing "is in-conflict with the facts testified under oath, by Schaefer." We find no abuse of discretion.

The mere fact that Judge Gibson presided over both the criminal and civil cases, or that he ruled on tampering allegations in both matters was an insufficient basis for recusal. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"); In re Corrugated Container Antitrust Litig., 614 F.2d 958, 963–64 (5th Cir. 1980) (finding that a judge did not need to recuse from presiding over a civil case simply because he made evidentiary rulings during the course of a criminal trial in which the defendant was also involved). Nor is the fact that Flood had filed a judicial misconduct complaint against Judge Gibson by itself sufficient to warrant recusal. See

10

United States v. Vampire Nation, 451 F.3d 189, 208 (3d Cir. 2006). The majority of Flood's arguments amount to a dissatisfaction with Judge Gibson's rulings, which is an inadequate basis for recusal.[7] See Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir. 2000). To the extent he alleges recusal was mandated because of unsubstantiated allegations of Judge Gibson's involvement in the tape tampering conspiracy, no reasonable person, knowing all the relevant facts, would harbor doubts about Judge Gibson's impartiality. In any event, because the basis for the motion to compel was precluded by issue preclusion, Flood was not prejudiced by Judge Gibson's failure to recuse.[8]

For the foregoing reasons, we will affirm the judgment of the District Court.[9]

---

[7] Flood's argument that the Magistrate Judge should have recused himself is also grounded in a dissatisfaction with his rulings; thus, his failure to recuse was not an abuse of discretion.

[8] We note that Judge Gibson subsequently recused himself from presiding over Flood's civil trial pursuant to 28 U.S.C. § 455.

[9] Appellant's letter motion to order the District Court and/or the Government defendants to pay his trial expenses is denied. Appellees' motion to file a corrected brief is granted.